IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CR-237-D
No. 5:20-CV-136-D

| | |
|---|---|
| TONY MARICHAL SHARP, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

On March 31, 2020, Tony Marichal Sharp ("Sharp" or "petitioner") filed a pro se motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his 480-month sentence [D.E. 520]. On May 11, 2020, the government moved to dismiss Sharp's petition [D.E. 531] and filed a memorandum in support [D.E. 532]. On May 27, 2020, Sharp responded in opposition and moved to appoint counsel [D.E. 534]. On February 1, 2021, Sharp moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 547]. On May 19, 2021, Sharp, through counsel, filed a memorandum in support and exhibits [D.E. 550]. On June 2, 2021, the government responded in opposition [D.E. 553] and filed an exhibit [D.E. 554]. On June 4, 2021, Sharp replied [D.E. 556]. As explained below, the court grants the government's motion to dismiss, dismisses Sharp's section 2255 motion, denies Sharp's motion for compassionate release, and denies Sharp's motion for appointment of counsel.

I.

On October 28, 2013, pursuant to a plea agreement, Sharp pleaded guilty to conspiracy to

distribute and possess with intent to distribute 280 grams or more of cocaine base (crack) (count one) and brandishing and discharging a firearm during and in relation to a drug trafficking crime and aiding and abetting (count nine). See [D.E. 1, 101, 102]. On May 16, 2014, the court held Sharp's sentencing hearing and adopted the facts as set forth in the Presentence Investigation Report ("PSR"). See [D.E. 233, 251, 252, 334]. The court calculated Sharp's total offense level to be 40, his criminal history category to be IV, and his advisory guideline range to be 360 months' to life imprisonment on count one and 120 months' consecutive imprisonment on count nine. See [D.E. 252] 1; [D.E. 334] 5. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Sharp to 360 months' imprisonment on count one and 120 months' consecutive imprisonment on count nine, for a total sentence of 480 months' imprisonment. See [D.E. 251] 2; [D.E. 334] 6–18. Sharp appealed [D.E. 253]. On March 19, 2015, the United States Court of Appeals for the Fourth Circuit affirmed the court's judgment. See United States v. Sharp, 598 F. App'x 181, 182 (4th Cir. 2015) (per curiam) (unpublished); [D.E. 381].

On January 14, 2016, Sharp, through counsel, moved for sentence reduction pursuant to 18 U.S.C. § 3582(c)(2), U.S.S.G. § 1B1.10, and Amendment 782 [D.E. 407]. On February 5, 2016, Sharp moved pro se for sentence reduction [D.E. 410]. On March 4, 2016, the government responded in opposition [D.E. 412]. On October 23, 2017, and May 21, 2018, Sharp filed additional pro se motions for sentence reduction [D.E. 462, 470]. On July 20, 2018, the court denied Sharp's motions [D.E. 480]. Sharp appealed [D.E. 482]. On October 26, 2018, the Fourth Circuit affirmed the court's denial. See United States v. Sharp, 740 F. App'x 376, 376 (4th Cir. 2018) (per curiam) (unpublished); [D.E. 489].

In Sharp's section 2255 motion, he contends that his section 924(c) conviction on count nine violates United States v. Davis, 139 S. Ct. 2319 (2019), and Johnson v. United States, 135 S. Ct.

2

2551 (2015). See [D.E. 520] 4, 13–14.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In reviewing a section 2255 motion, the court is not limited to the motion itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977); United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013).

Section 2255(f) contains a one-year statute of limitations. Section 2255(f) provides that the one-year clock is triggered by one of four conditions, whichever occurs last:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §§ 2255(f)(1)–(4); see Johnson v. United States, 544 U.S. 295, 299–300 (2005); Whiteside v. United States, 775 F.3d 180, 182–83 (4th Cir. 2014) (en banc).

On March 19, 2015, the Fourth Circuit entered judgment against Sharp. See Sharp, 598 F. App'x at 182. Sharp's judgment became final on June 17, 2015, and his time to file a section 2255 motion ended on June 17, 2016. See Clay v. United States, 537 U.S. 522, 527 (2003). Sharp, however, did not file his section 2255 motion until March 31, 2020. See [D.E. 520]. Thus, Sharp's section 2255 motion is untimely under section 2255(f). Furthermore, Sharp has not plausibly alleged that any governmental action prevented him from filing a timely motion, that his motion is based on a right newly recognized by the Supreme Court,[1] or that his motion is based on facts that could not have been discovered earlier through the exercise of due diligence. Accordingly, the court dismisses Sharp's section 2255 motion as untimely under section 2255(f).

Alternatively, Sharp procedurally defaulted his claim by failing to raise it on direct appeal. Thus, the general rule of procedural default bars Sharp from presenting his claim under section 2255. See, e.g., Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 621 (1998); United States v. Fugit, 703 F.3d 248, 253 (4th Cir. 2012); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). Furthermore, Sharp has not plausibly alleged "actual innocence" or "cause and prejudice" resulting from the alleged error about which he now complains. See

---

[1] Sharp argues that Davis was not yet decided when he appealed, see [D.E. 520] 4–6, but Davis does not help Sharp. See [D.E. 532] 3–4.

4

Bousley, 523 U.S. at 622–24; Coleman v. Thompson, 501 U.S. 722, 753 (1991); United States v. Frady, 456 U.S. 152, 170 (1982); United States v. Pettiford, 612 F.3d 270, 280–85 (4th Cir. 2010); Sanders, 247 F.3d at 144; United States v. Mikalajunas, 186 F.3d 490, 492–95 (4th Cir. 1999). Thus, the claim fails.

Alternatively, Sharp's plea agreement contains an appellate waiver. See [D.E. 102] ¶ 2(c). In the waiver, Sharp agreed

> [t]o waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to appeal whatever sentence is imposed, including any issues that relate to the establishment of the advisory Guideline range, reserving only the right to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing, and further to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea. The foregoing appeal waiver does not constitute or trigger a waiver by the United States of any of its rights to appeal provided by law.

Id. In light of Sharp's Rule 11 proceeding, the appellate waiver is enforceable. See [D.E. 101]; United States v. Copeland, 707 F.3d 522, 528–30 (4th Cir. 2013); United States v. Davis, 689 F.3d 349, 354–55 (4th Cir. 2012) (per curiam); United States v. Thornsbury, 670 F.3d 532, 537 (4th Cir. 2012); United States v. Blick, 408 F.3d 162, 168 (4th Cir. 2005). Sharp's claim falls within the appellate waiver. Accordingly, the waiver bars the claim.

Alternatively, the claim fails on the merits. In Davis, the Court analyzed the constitutionality of a section 924(c) conviction tied to an underlying "crime of violence." See Davis, 139 S. Ct. at 2327–36. Likewise, in Johnson, the Court analyzed a section 924(c) conviction predicated on a "crime of violence" grounded in the residual clause. See Johnson, 135 S. Ct. at 2555–63. In contrast, Sharp's section 924(c) conviction was predicated on a drug trafficking crime. See [D.E. 102]. Thus, Davis and Johnson do not help Sharp.

5

After reviewing the claim presented in Jones's motions, the court finds that reasonable jurists would not find the court's treatment of Sharp's claim debatable or wrong and that the claim does not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

II.

As for Sharp's motion for compassionate release, on December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the

safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[2] Application note 2 states

---

[2] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75

7

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made

---

        percent of his or her term of imprisonment, whichever is less.

(C)   Family Circumstances.—

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)   Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

On March 2, 2021, Sharp submitted a compassionate release request, which the warden denied on March 11, 2021. See [D.E. 550] 2. The government has not invoked section 3582's exhaustion requirement. See [D.E. 553] 1 n.2; United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[3] Accordingly, the court addresses Sharp's claim on the merits.

Sharp seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Sharp cites the COVID-19 pandemic, his bout with and recovery from COVID-19, his race, and his history of smoking, chronic rhinitis, lower back pain, muscle spasms, pityriasis versicolor, and onychia and paronychia of the toe. See [D.E. 550] 4–5, 7; [D.E. 550-4]; [D.E. 556] 1, 5. Sharp also cites the conditions at Atwater USP, his rehabilitation efforts, his release plan, and his new advisory guideline range on count one. See [D.E. 547-1]; [D.E. 547-2] 1–5; [D.E. 550] 6, 8–10;

---

[3] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

9

[D.E. 550-6]; [D.E. 550-7]; [D.E. 550-8]; [D.E. 550-9]; [D.E. 550-10]; [D.E. 550-11]; [D.E. 556] 6–7.[4]

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Although Sharp states that he suffers from a history of smoking, chronic rhinitis, lower back pain, muscle spasms, pityriasis versicolor, and onychia and paronychia of the toe, he has not demonstrated that he is not going to recover from these conditions or that they cannot be treated while Sharp serves his sentence. The same point holds true if Sharp were again to contract COVID-19. Moreover, Sharp has received both doses of the Pfizer BioNTech vaccine. See [D.E. 550] 4 n.3; [D.E. 553] 19–20; [D.E. 554]. Sharp argues that the vaccine may not lower his medical risks, but the court rejects his argument as meritless. Cf. [D.E. 556] 2–4 Accordingly, reducing Sharp's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Sharp's medical conditions, Sharp's rehabilitation efforts, his release plan, and his new advisory guideline range are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Sharp's sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d

---

[4] Sharp's new advisory guideline range on count one is 324 to 405 months' imprisonment based on a total offense level 38 and criminal history category IV. See [D.E. 550] 8; [D.E. 550-5].

10

at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Sharp is 27 years old and engaged in horrific criminal conduct from at least 2009 until 2013. See PSR ¶¶ 5–26. Sharp was a member of a violent drug trafficking organization responsible for assaults, shootings, and rape. See id. Sharp helped to distribute 12.15 kilograms of cocaine. See id. ¶¶ 24, 26. Moreover, Sharp violently furthered the organization's goals, including shooting a man in a parking lot and orchestrating a home invasion in which a rival drug dealer's girlfriend was raped in front of her six-year old daughter. See id. ¶¶ 18–21, 25–26. Sharp also acted as a manager in the organization, delivered drugs for the organization, used others to deliver drugs on his behalf, and possessed a firearm to further his drug dealing. See id. ¶¶ 24, 26. At sentencing, the court commented that the criminal behavior (especially the home invasion, rape, and subsequent assault) took the court's "breath away" due to how evil it was. [D.E. 334] 12–18. Furthermore, Sharp is a recidivist drug dealer with convictions for sale and delivery of cocaine, attempting to traffick cocaine, and possession of drug paraphernalia (two counts). See PSR ¶¶ 30–35. Although Sharp has taken some positive steps while incarcerated, he sustained disciplinary infractions for using a third party texting service to circumvent the institution's email monitoring system, refusing work assignments or programming, possessing alcohol or drugs, fighting, possessing a dangerous weapon, assaulting an inmate without serious injury, phone abuse/disrupt monitoring, and possessing a non-hazardous tool. See [D.E. 547-1]; [D.E. 547-2] 1–5; [D.E. 550] 8–10; [D.E. 550-3]; [D.E. 550-6]; [D.E. 550-7]; [D.E. 550-8]; [D.E. 550-9]; [D.E. 550-10]; [D.E. 550-11]; [D.E. 553] 7–8; [D.E. 556] 6–7. Sharp's serious misconduct in prison suggests that he will not comply with the law when he is ultimately released.

The court has considered Sharp's exposure to and recovery from COVID-19, his vaccination status, his medical conditions, his rehabilitation efforts, his serious misconduct in prison, his new advisory guideline range, and his release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Having considered the entire record, the steps that the BOP has taken to address COVID-19 and to vaccinate and treat Sharp, the section 3553(a) factors, Sharp's arguments, the government's persuasive response, and the need to punish Sharp for his serious criminal behavior, to incapacitate Sharp, to promote respect for the law, to deter others, and to protect society, the court declines to grant Sharp's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

III.

In sum, the court GRANTS the government's motion to dismiss [D.E. 531], DISMISSES Sharp's section 2255 motions [D.E. 520], DENIES a certificate of appealability, DENIES Sharp's motion for compassionate release [D.E. 547], and DENIES as moot Sharp's motion for appointment of counsel [D.E. 534].

SO ORDERED. This 2 day of July 2021.

JAMES C. DEVER III
United States District Judge